Robert F. McCauley (SBN 162056)
robert.mccauley@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Matthew C. Berntsen (*pro hac vice* pending)
matthew.berntsen@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP**
Two Seaport Lane, Sixth Floor
Boston, MA 02210-2001
Telephone: (617) 646-1600
Facsimile: (617) 646-1666

*Attorneys for Applicant MediaTek Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In Re Ex Parte* Application of MEDIATEK INC. <br><br> Applicant, <br><br> for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for use in Foreign Proceedings. | Case No. <br><br> **MEDIATEK INC.'S *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782(a) GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................................1

II.  NATURE AND STATE OF THE PROCEEDINGS...................................................2

III. FACTUAL BACKGROUND ........................................................................................3

    A.   The Parties ...........................................................................................................3

    B.   MediaTek's Proposed Discovery ........................................................................4

IV.  LEGAL ARGUMENT ...................................................................................................5

    A.   The Present Application Satisfies Section 1782's Statutory Requirements ............5

    B.   The *Intel* Discretionary Factors Weigh in Favor of Granting the Application ........8

        1.   Intel Is Not a Participant in the German Actions .........................................9

        2.   German Courts Are Receptive to Information Obtained Through United States Discovery..................................................................................9

        3.   Applicant Is Not Attempting to Circumvent German Proof-Gathering Restrictions or Policies ................................................................................10

        4.   The Scope of Information Applicant Seeks Is Commensurate with the Information's Relevance to the German Proceedings and Will Not Unduly Burden Respondent ........................................................................11

V.   CONCLUSION..............................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*In re Ex Parte Apple Inc.*,
 No. 12-mc-80013, 2012 WL 1570043 (N.D. Cal. May 2, 2012)..................................................5

*In re: Ex Parte Application Varian Med. Sys. Int'l AG*,
 No. 16-MC-80048, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016)..........................5, 6, 10, 11

*IPCom GmbH & Co. KG v. Apple Inc.*,
 61 F. Supp. 3d 919 (N .D. Cal. 2014) ........................................................................................1

*Conopco, Inc. v. Warner-Lambert Co.*,
 No. 99-cv-101, 2000 WL 342872 (D.N.J. Jan. 26, 2000)..........................................................7

*Cryolife, Inc. v. Tenaxis Med., Inc.*,
 No. 08-cv-05124, 2009 WL 88348 (N.D. Cal. Jan. 13, 2009).............................................9, 10

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
 633 F.3d 591 (7th Cir. 2011) ...............................................................................................9, 10

*High Point Sarl v. Sprint Nextel Corp.*,
 2011 WL 3241432 (D. Kan. Jul. 29, 2011) ...............................................................................7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
 542 U.S. 241 (2004)........................................................................................................ passim

*Koninklijke Philips N.V. v. Wangs Alliance Corp.*,
 No. 14-cv-12298, 2018 U.S. Dist. LEXIS 607 (D. Mass. Jan. 2, 2018)....................................7

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*,
 539 F.2d 1216 (9th Cir. 1976) ...................................................................................................1

*In re LG Elect. Deutschland GmbH*,
 No. 12-cv-1197, 2012 WL 1836283 (S.D. Cal. May 21, 2012) ..........................................5, 11

*Matsushita Electric Industrial Co., Ltd. v. Mediatek, Inc.*,
 No. 05-cv-3148 MMC, 2007 WL 963975 (N.D. Cal. Mar. 30, 2007)......................................7

*Matter of Action & Prot. Found.*,
 No. 14-cv-80076 MISC, 2015 WL 1906984 (N.D. Cal. Apr. 27, 2015) ..................................1

*In re Minatec Fin. S.A.R.L.*,
 2008 WL 3884374, at *7 .........................................................................................................10

*In re MSTG, Inc.*,
 675 F.3d 1337 (Fed. Cir. 2012).................................................................................................7

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ........................................................................................................... 11

*Palantir Techs., Inc. v. Abramowitz*,
    415 F. Supp. 3d 907 (N.D. Cal. 2019) ............................................................................... 10

*Rainsy v. Facebook, Inc.*,
    311 F. Supp. 3d 1101 (N.D. Cal. 2018) ........................................................................... 6, 9

*In re Republic of Ecuador*,
    No. 10-cv-80225 MISC, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) ............................. 5

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) ................................................................................................... 5

*Siemens AG v. Western Digital Corp.*,
    No. 8:13-cv-01407, 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ....................................... 9

*In re Todo*,
    No. 5:22-mc-80248, 2022 WL 4775893 (N.D. Cal. Sept. 30, 2022) .................................... 6

**Federal Statutes**

28 U.S.C. § 84(a) ........................................................................................................................... 6

28 U.S.C. § 1782 ................................................................................................................. *passim*

### *EX PARTE* APPLICATION

**I.   INTRODUCTION**

Applicant MediaTek Inc. ("**Applicant**" or "**MediaTek**") submits this *Ex Parte* Application for an Order to Obtain Discovery for Use in Foreign Proceedings pursuant to 28 U.S.C. § 1782(a). Specifically, MediaTek seeks an order to authorize document and deposition subpoenas requiring Intel Corporation ("**Respondent**" or "**Intel**"), whose purported successor-in-interest, Daedalus Prime LLC ("**Prime**"), has filed suit asserting two German patents against MediaTek before the Düsseldorf Regional Court in Germany. MediaTek intends to file corresponding nullity actions against Prime.[1] This discovery will yield evidence highly relevant to MediaTek's defenses in Prime's German proceedings, which is precisely the purpose of Section 1782.

MediaTek seeks an order to authorize subpoenas requiring Intel to provide specific documents and make itself available for a deposition for use in connection with (i) patent infringement actions in Germany bearing case Nos. 4b O 16/24 and 4b O 21/24, both pending before the Düsseldorf Regional Court; (ii) contemplated corresponding nullity actions on each asserted German patent. The document and deposition subpoenas proposed to be served on Intel in substantially similar form are attached to this application as Exhibits A and B, respectively. This application is supported by an accompanying Memorandum of Law, the Declaration of Matthew C. Berntsen ("**Berntsen Decl.**"), and the Declaration of Dr. Dr. Jochen Herr ("**Herr Decl.**"), filed concurrently herewith.

This application is brought on an *ex parte* basis pursuant to Civil L.R. 7-10, as this District has expressly authorized and routinely accepts. *See, e.g., Matter of Action & Prot. Found.,* No. 14-cv-80076 MISC, 2015 WL 1906984, at *6 (N.D. Cal. Apr. 27, 2015) ("An *ex parte* application is an acceptable method for seeking discovery pursuant to § 1782.") (citing *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976)); *IPCom GmbH & Co. KG v. Apple Inc.,* 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) ("It is common for parties to file *ex parte* [Section 1782] applications, as parties will be given adequate notice of any discovery taken pursuant to the

---

[1] A German nullity action is the equivalent of an invalidity defense or counterclaim in the U.S. but is filed as a separate lawsuit.

request and will then have the opportunity to move to quash the discovery or to participate in it.") (internal quotations omitted).

The discretionary factors established in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) militate in favor of granting this Application. First, the Respondent from whom discovery is sought, is not a participant in the ongoing German proceedings and, as such, this Application constitutes the only practical and timely method for obtaining the needed evidence for use there. Second, there is no indication that the foreign tribunal would be unreceptive to the evidence. Third, the documentary and testimonial evidence sought through the instant Application would likely be admissible in the ongoing German proceedings and does not otherwise circumvent any proof-gathering restriction under the laws of Germany. Fourth, the discovery sought through this Application is not unduly intrusive or burdensome because it is of limited scope. The proposed requests to Respondent seek limited records relating to the alleged acquisition and alleged ownership of claims for damages and rights (and limitations on such rights) to assert, and valuation of the patents asserted against MediaTek in Germany, information that is relevant to MediaTek's defenses including, for example but not limited to, the value-in-dispute, non-infringement, invalidity/nullity, license, standing, as well as disproportionality of the relief (injunction, claims for information, accounting, product recalls, and destruction) sought by Prime, and other defenses in Germany. Applicant also seeks limited records relating to the nature of Prime's sources of income and business plans (to the extent Intel has such documents), which are relevant to Applicant's license defense in Germany.

Accordingly, for the reasons described below and supporting declarations, Applicant respectfully requests that the Court issue an Order in the proposed or substantially similar form attached hereto as Exhibit 1 (1) granting judicial assistance pursuant to 28 U.S.C. § 1782, and (2) authorizing Applicant to serve subpoenas including discovery requests in substantially similar form as those attached hereto as Exhibits A and B.

## II.  NATURE AND STATE OF THE PROCEEDINGS

Prime appears to operate as a patent monetization entity. Rather than make or sell products of services, Prime is believed to simply acquire and litigate patents in an effort to obtain licensing fees.

Prime began its litigation campaign in August of 2022 with three lawsuits in the District of Delaware and a complaint before the International Trade Commission ("**ITC**"). It filed three more lawsuits in the Eastern District of Texas and two new ITC actions in September of 2022, and another lawsuit in the Eastern District of Texas in June of 2022. In total, Daedalus's first series of cases involved 23 patents and 27 defendants, including MediaTek in one of the ITC actions. However, that ITC action was not instituted as to MediaTek and thus there was no discovery of or by MediaTek. Berntsen Decl. ¶ 17.

Now, Prime has made new claims against MediaTek and expanded its case to an international scale, including filing a Statement of Claim with the Düsseldorf Regional Court in Germany[2] alleging infringement of German Patents DE 11 2012 003 701 B4 (Ex. 6, "**DE'701**") and DE 11 2012 005 210 B4 (Ex. 7, "**DE'210**") (together with DE'701, the "**Asserted Patents**") and assigned Case Nos. 4b O 16/24, regarding DE'701 and 4b O 21/24 regarding DE'210 (the "**German Actions**"), respectively. *See generally* Exs. 1, 1b, 2, 2b.

MediaTek is now forced to defend itself without the benefit of crucial discovery, which is not available in German proceedings. MediaTek thus comes to the United States pursuant to Section 1782 seeking targeted and routinely granted discovery to help it defend itself in the German Actions. For example, MediaTek seeks documents and information relevant at least to its value-in-dispute, noninfringement, invalidity/nullity, and standing defenses in Germany. *See* Exs. A, B, proposed discovery requests.

### III. FACTUAL BACKGROUND

#### A. The Parties

MediaTek is one of the largest fabless semiconductor companies in the world, and powers approximately 2 billion devices worldwide annually with its chips. MediaTek offers cross-platform integrated circuit design solutions for smart home applications, broadband networking, smart IoT, Bluetooth audio, automotive electronics, ASICs, and smart mobile devices. MediaTek is a

---

[2] Prime also recently sued MediaTek in the Eastern District of Texas, where MediaTek's Response to the Complaint is not due until August and discovery has not opened. *See* Ex. 8 (Complaint).

corporation organized under the laws of Taiwan with its principal place of business at No. 1, Dusing 1st Rd., Hsinchu Science Park, Hsinchu, 30078, Taiwan. Berntsen Decl. ¶ 18.

Intel is organized under the laws of Delaware with a principal place of business within this District at 2200 Mission College Boulevard, Santa Clara, CA 95054-1549. Berntsen Decl. ¶ 19; Ex. 9 at 1. Intel is the assignee at issue of the Asserted Patents. Exs. 6, 7 at cover.

### B.      MediaTek's Proposed Discovery

MediaTek seeks targeted and specific information from Respondent that is highly relevant to MediaTek's noninfringement, invalidity/nullity, value-in-dispute, and defenses in the German Actions and the contemplated German nullity actions. However, German proceedings do not provide discovery processes such as those available in American courts, which would allow MediaTek to obtain this important information from Respondent. Herr Decl. ¶¶ 58-59, filed concurrently herewith. MediaTek accordingly seeks targeted discovery here to better enable the German courts to adjudicate the German Actions and MediaTek's expected forthcoming nullity actions on complete factual records. To this end, MediaTek attaches to this application as Exhibits A and B proposed requests for production and deposition topics, respectively, regarding:

1) Ownership history of the Asserted Patents, and Respondent's understanding and beliefs regarding any agreements, assignments, and procurement of the Asserted Patents, which is relevant to standing in Germany,

2) Actual value of the Asserted Patents and the amounts paid for them, which is highly relevant to the determination of the value-in-dispute and securities to be provided by Prime in case of enforcement of first instance infringement rulings,

3) Revenues from licensing, which is relevant for MediaTek's defense against the injunction claim and for the later calculation of damages,

4) Prime's capitalization and funding, which may impact the potential security amount to be deposited by Prime,

5) Infringement and validity of the Asserted Patents including prior art and prior use products, which is key for MediaTek's non-infringement position and invalidity attacks.

*See* Exs. A, B.

This information has not been and is unlikely to be produced by Prime in the German Actions, much less by Intel (a non-party in Germany). Yet this information is necessary for MediaTek to present a full and fair defense, for the German courts to consider a complete factual record, and for the additional reasons explained below. *See generally* Herr Decl.

## IV.  LEGAL ARGUMENT

### A.  The Present Application Satisfies Section 1782's Statutory Requirements

Section 1782, entitled "Assistance to foreign and international tribunals and to litigants before such tribunals," authorizes federal district courts to order discovery to assist applicants, such as MediaTek, in obtaining evidence in the United States for use in foreign legal proceedings. *Intel*, 542 U.S. at 247. Section 1782 aims to "provid[e] efficient means of assistance to participants in international litigation in our federal courts and encourag[e] foreign countries by example to provide similar means of assistance to our courts." *In re Republic of Ecuador*, No. 10-cv-80225 MISC, 2010 WL 3702427, at *1 (N.D. Cal. Sept. 15, 2010) (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 84 (2d Cir. 2004)). "The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure." *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-MC-80048, 2016 WL 1161568, at *5 (N.D. Cal. Mar. 24, 2016). In fact, United States courts are encouraged to grant Section 1782 applications because "our courts favor broad discovery generally." *In re LG Elect. Deutschland GmbH,* No. 12-cv-1197, 2012 WL 1836283, at *3 (S.D. Cal. May 21, 2012). Moreover, "[s]ection 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings," but allows discovery for use in foreign proceedings that have not yet commenced. *Intel*, 542 U.S. at 258.

Courts may grant an application when the following statutory requirements are satisfied: "(1) the discovery sought is from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'" *Varian*, 2016 WL 1161568 at *2 (quoting *In re Ex Parte Apple Inc.*, No. 12-mc-80013, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012)). Here, MediaTek's request for discovery meets each of these statutory requirements.

First, MediaTek seeks discovery from a resident of the Northern District of California. Intel has a principal place of business in Santa Clara County located at 2200 Mission College Boulevard, Santa Clara, CA 95054-1549. Berntsen Decl. ¶ 19; Ex. 9 at 1; 28 U.S.C. § 84(a). Thus, Intel is "found" in the Northern District of California for Section 1782 purposes. *See, e.g.*, *In re Todo*, No. 5:22-mc-80248, 2022 WL 4775893, at *2 (N.D. Cal. Sept. 30, 2022) ("In this district, business entities are 'found' where the business is incorporated, is headquartered, or where it has a principal place of business.") (collecting cases).

Second, the documents and deposition testimony requested are "for use" in the German Actions because they are relevant there. *See* Herr Decl. ¶¶ 25-57; *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018) (information "for use" in foreign proceeding must be relevant, although "the [C]ourt should be 'permissive' in interpreting that standard") (internal citation omitted). Courts consider German courts as "tribunals" under Section 1782. *See Varian*, 2016 WL 1161568 at *3.

Here, there can be no dispute that the requested discovery has relevance to the foreign proceedings. For example, information regarding purchase, license, settlement agreements and negotiations will enable Applicant to challenge Prime's German value-in-dispute and damages claims. Herr Decl. ¶¶ 32-46. Despite accusing thousands of MediaTek articles of infringement in Germany, Prime has presented to the German court that the value-in-dispute is only 3M € (1.5M € per each of the Asserted Patents). *See* Herr Decl. ¶ 13. On information and belief, Prime actually values the litigation much higher. Moreover, the value of the Asserted Patents, as evidenced by their purchase price and royalties paid for their use, is one measure German courts could use to determine the value-in-dispute. Herr Decl. ¶ 37.

In Germany, attorneys' fees are granted to the victor in litigation by rule. Herr Decl. ¶ 34. The decisive factor for the value-in-dispute of German infringement proceedings is the economic interest that is objectively being pursued by the plaintiff in its legal action. For example, the economic interest in averting the disadvantages associated with further infringements is decisive for the assessment of the claim for injunctive relief; in this context, also the plaintiff's conditions (such as its turnover, size and market position), which provide information on the expected imminent

damage from the alleged patent infringement, play a role. The value in dispute of a German nullity action is determined by the fair market value of the patent in suit at the time the action is filed plus any claims for damages due to patent infringement that have arisen up to that point. Herr Decl. ¶ 36.

In addition, Germany bifurcates liability and damages portions of patent trials, with the damages phase of trial beginning only if liability is found and when the infringed party asserts its damages claims. Herr Decl. ¶¶ 44-45. Nevertheless, discovery into damages issues in the German Actions is appropriate at least because Section 1782 allows discovery for use in foreign proceedings that have not yet commenced. *See Intel.*, 542 U.S. at 258. Also, the royalty rates demanded from licensees, the purchase price of the Asserted Patents, and/or settlement demands could serve as factors to determine the objective financial value of the Asserted Patents. Herr Decl. ¶¶ 37, 46.

Further, Intel may have made statements regarding claim scope, patent value, or patent strength during licensing purchase negotiations that may be relevant. *See Conopco, Inc. v. Warner-Lambert Co.*, No. 99-cv-101, 2000 WL 342872, *6 (D.N.J. Jan. 26, 2000). The German courts might account for these representations for infringement and validity purposes. *See* Herr Decl. ¶ 56.

German courts will consider statements discussing the Asserted Patents and their licensing, purchasing, and other communications when construing claim terms in the asserted patent in the German Actions. *See* Herr Decl. ¶ 56. Therefore, agreements and negotiations regarding licensing and purchasing the Asserted Patent are relevant to MediaTek's positions in the German Actions. Herr Decl. ¶ 56. And Prime's standing to sue is also critical to verify whether it has the right to sue under German law. Herr Decl. ¶¶ 29-31.

Continuing through the German Actions without this information would be unfair to MediaTek, which is why courts dependably find licensing and communications surrounding licensing discoverable. *See In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) (licensing negotiations discoverable); *Matsushita Electric Industrial Co., Ltd. v. Mediatek, Inc.*, No. 05-cv-3148 MMC, 2007 WL 963975, at *2 (N.D. Cal. Mar. 30, 2007); *Koninklijke Philips N.V. v. Wangs Alliance Corp.*, No. 14-cv-12298, 2018 U.S. Dist. LEXIS 607, *17 (D. Mass. Jan. 2, 2018) (licensing correspondence "is relevant not only for invalidity and infringement but also damages"); *High Point Sarl v. Sprint Nextel Corp.*, 2011 WL 3241432, *5 (D. Kan. Jul. 29, 2011) ("Other courts

have found a patent holder's correspondence with third parties related to licensing negotiations to be relevant in patent infringement suits. Courts have found it relevant to ascertaining the extent of liability formulating an appropriate litigation strategy, infringement and validity of the patents at issue, whether prior licenses are comparable, and calculation of reasonable royalty.").

Additionally, the assignment histories of the Asserted Patents are relevant to Prime's standing to sue. Under German law, in general only the patent proprietor registered in the patent register is generally authorized to initiate legal proceedings. Herr Decl. ¶¶ 27-31. Where a patent was transferred and the new owner of the patent asserts, in its own name, claims for damages, claims for information and accounting of the infringing items covering a period before the new patent proprietor was registered in the patent register, the new patent proprietor must prove that these claims have been assigned to the new patent proprietor. *Id*. The necessary proof includes proving that those who executed any assignments had the signatory authority to do so. *Id*. If the assignment of patent rights was part of a foreign transaction, the German court must also determine that the assignment complied with the relevant foreign law. *Id*.

Moreover, information related to products that allegedly embody the patented invention is important to invalidity and noninfringement arguments. Public use or sale of products embodying an Asserted Patent before it was filed anticipates the patent and invalidates it. *See* Herr Decl. ¶¶ 53-56.

For at least these reasons, the information Applicant seeks is highly relevant to the German Actions and should be produced.

Last, Applicant is a defendant in the German Actions and an expected plaintiff in nullity actions, so it is an "interested person." *See Intel*, 542 U.S. at 256 (2004) ("No doubt litigants are included among . . . the 'interested person[s]' who may invoke § 1782").

B.   The *Intel* Discretionary Factors Weigh in Favor of Granting the Application

In *Intel*, the Supreme Court provided a non-exhaustive list of factors that district courts can consider when deciding whether to grant Section 1782 applications: (1) Whether "the person from whom discovery is sought is a participant in the foreign proceeding" because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the

receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "[W]hether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) Whether the request is otherwise "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65. In this case, all four factors favor granting discovery.

### 1. Intel Is Not a Participant in the German Actions

The first *Intel* factor favors applications seeking discovery from non-parties to the foreign tribunal. *See* 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid."). In *Intel*, the Supreme Court expressed its concern that a party to a foreign litigation would use Section 1782 to obtain evidence that it could have obtained through foreign procedure in the foreign tribunal. *Id.* Courts, however, routinely authorize Section 1782 discovery with respect to German proceedings because German courts do not allow the extent of early discovery allowed in the United States. *See, e.g.*, *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (authorizing Section 1782 discovery because German litigant could not "obtain even remotely comparable discovery by utilizing German procedures"); *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. 08-cv-05124, 2009 WL 88348, at *2-3 (N.D. Cal. Jan. 13, 2009) (finding first *Intel* factor favors Applicant with respect to litigation in German courts); *Siemens AG v. Western Digital Corp.*, No. 8:13-cv-01407, 2013 WL 5947973, at *2 (C.D. Cal. Nov. 4, 2013) (same).

Here, Intel is not even a participant in the German Actions, so this factor favors this Application. *See, e.g.*, *Rainsy* 311 F. Supp. 3d at 1112 ("Here, Facebook is not a party to the Cambodian proceeding and therefore Applicant needs the assistance of § 1782 to obtain the information he seeks".)

### 2. German Courts Are Receptive to Information Obtained Through United States Discovery

A decision to grant a 1782 application should "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Indeed, "[i]n the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, courts tend to err on the side of permitting discovery." *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019) (quoting *Varian*, 2016 WL 1161568 at *4) (internal alterations in original).

Importantly, many cases have recognized the receptiveness of the German courts to the use of discovery obtained through Section 1782. *See, e.g.*, *Heraeus Kulzer*, 633 F.3d at 596 ("And there is no indication that the German court . . .. would refuse to admit evidence that Heraeus obtained through U.S. discovery and could not have obtained by utilizing the procedures of German law for evidence gathering."); *Cryolife*, 2009 WL 88348, at *3 (concluding that the second *Intel* factor weighed in favor of discovery where there was "no basis to conclude that the German court would be unreceptive to the information requested by [the applicant]."); *In re Minatec Fin. S.A.R.L.*, 2008 WL 3884374, at *7 ("[W]e find neither any rejection nor offense taken by the German tribunals to a stateside discovery order.").

Indeed, German courts are generally receptive to information obtained through Section 1782 applications and the specific German court presiding over the German Actions has given no indication that it would not consider evidence produced in response to a subpoena under Section 1782. *See* Herr Decl. at ¶¶ 60-62.

Here, MediaTek seeks information highly relevant to its noninfringement, invalidity/nullity, value-in-dispute, and procedural arguments. Section IV.A, *supra*.

Thus, the second *Intel* factor favors this Court's granting this Application.

### 3. Applicant Is Not Attempting to Circumvent German Proof-Gathering Restrictions or Policies

Under Section 1782, the documents and testimony sought do not need to be discoverable in the foreign court. *See Intel*, 542 U.S. at 260–63. Rather, "there is no requirement under § 1782 that the requested information would be discoverable under German law, and the mere fact that the discovery is unavailable under foreign law is not a basis for denying its application." *Cryolife*, 2009 WL 88348 at *4 (internal quotation marks and citation omitted).

Jochen Herr's Declaration establishes that German courts will accept the discovery Applicant seeks. Herr Decl. ¶¶ 60-62. In addition, there can be no suggestion that this application is brought in bad faith. As demonstrated above, Intel is uniquely positioned to provide relevant documents and information related to the discovery requests and deposition topics. This application is intended to marshal the proof needed for MediaTek to defend against Prime's claims of patent infringement and, therefore, there can be no dispute that MediaTek is proceeding in good faith. Thus, this factor weighs in favor of this Court's granting this Application.

### 4. The Scope of Information Applicant Seeks Is Commensurate with the Information's Relevance to the German Proceedings and Will Not Unduly Burden Respondent

Discovery under Section 1782 is as broad as discovery under the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1782(a). Relevance in this context "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure." *Varian*, 2016 WL 1161568 at *5. In fact, United States courts are encouraged to grant Section 1782 applications because "our courts favor broad discovery generally." *In re LG Elect.*, 2012 WL 1836283 at *3.

In *Intel*, the Supreme Court stated that "unduly intrusive or burdensome requests may be rejected or trimmed." 542 U.S. at 265. In accordance with the Court's directive to avoid unduly intrusive or burdensome discovery, MediaTek seeks discovery into the targeted areas discussed in Sections III.B and IV.A, *supra*.

Moreover, a deposition is necessary because Respondent's understanding and belief regarding any agreements and the procurement of Asserted Patents is applicable to Applicant's defenses in the German Actions and may not be contained in documents. Herr Decl. ¶ 57. Depositions are also necessary for Applicant to substantiate Respondent's beliefs regarding the transfers of the patent, including the actual value of the patents transferred, and the consideration paid. *Id*. This information, including why it was not disclosed in the complaint, is highly relevant to

the value of litigation, as well as the propriety of the patent assignments and standing to sue, but may not be contained in documents.

The relevance of this information—which is explained in more detail above—is commensurate with the minimal burden its production will place upon Respondent. This factor therefore favors this Court's granting BMW AG's Application.

## V. CONCLUSION

For the reasons discussed above, MediaTek respectfully requests that this Court enter the proposed order submitted concurrently with this filing authorizing MediaTek to obtain limited discovery from Intel Corporation pursuant to Section 1782(a) in substantially similar form as set forth in the proposed discovery requests attached as Exhibits A and B.

Dated: June 25, 2024

**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

By: /s/ Robert F. McCauley
Robert F. McCauley (SBN 162056)

*Attorney for Applicant*
MEDIATEK INC.